No. 13,063

STATE EX REL. NATIONAL BROADWAY BANK VS. CITY OF NEW ORLEANS.

SYLLABUS.

City improvement certificates issued to contractors for street paving, block by block, as the work progresses, are payable in cash upon appropriations when made by the city; and their payment does not, in any manner, depend upon the contractor's fulfillment of the maintenance clause of his contract in behalf of the city.

ON APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Farrar, Jonas, Kruttschnitl & Gurley* for Plaintiff and Appellee.

*Samuel L. Gilmore,* City Attorney, and *W. B. Sommerville,* Assistant City Attorney, for Defendant, Appellant.

Argued and submitted February 21, 1899.
Opinion handed down March 7, 1899.
Rehearing refused March 20, 1899.

The opinion of the court was delivered by

WATKINS, J.   This is a proceeding by *mandamus* directed to the city of New Orleans, commanding it through its proper disbursing officers, the mayor, comptroller and treasurer, forthwith to pay over to petitioner, out of funds appropriated therefor, in cash on the surrender and delivery thereof, the amount of certificates Nos. 1 and 2, as set out and particularly described in its petition, bearing date September 10th, 1895, issued to the Rosetta Gravel, Paving and Improvement Company, amounting in the aggregate to $5,477.14 with six *per cent. per annum* interest from date.

On the trial there was a judgment making the *mandamus* peremptory, and the respondent city prosecutes this appeal therefrom.

The substantial representation of the relator is as follows, viz.:

That by virtue of a notarial contract made and entered into between the city of New Orleans and the Rosetta Gravel, Paving and Improvement Company, bearing date May 10th, 1895, the latter contracted and agreed to do certain paving work on Poland street, to be done at prices therein specified, partly by the front or abutting proprietors, and partly for certificates due on demand by the city.

That said paving and other work was duly performed by the gravel company, the same was accepted by the city, and certificates were duly issued for the city's portion of said work; and same were signed by the commissioner of public works, the city engineer, and the mayor of the city and delivered to the gravel company.

That among these so issued were certificates Nos. 1 and 2, each dated September 10th, 1895, one for $2,170.67 and the other for $3,256.52.

State ex rel. National Broadway Bank vs. City.

That on the 9th of April, 1896, for value received, the gravel company transferred and assigned said certificates to relator, and, upon the same day, said transfer was registered in the office of the comptroller of the city in pursuance of ordinance No. 2066, Administration Series; and that, ever since, the city of New Orleans has recognized relator as the owner and holder of same.

That by ordinance No. 11,347, C. S., adopted since said assignment, the city made due and proper appropriations to pay said certificates in their respective order and rank, under which there are, at this time, ample funds in the city treasury applicable to the payment and satisfaction thereof, capital and interest.

That relator presented said certificates to the city comptroller for such payment, and he "refused to make such payment until (it) had " presented him the certificate required by ordinance No. 13,338, C. S; " and, that thereupon, its counsel addressed a letter to the comptroller " making a formal demand of him for payment of said certificates, " and to which he replied that he was prepared to pay same when re- " lator complied with the requirements of said ordinance No. 13,338,. " C. S."

Relator specially avers that said ordinance was adopted by the city council long subsequent to the execution and fulfillment of the aforesaid contract by the gravel company; long after the passage of ordinance No. 11,347, C. S., making appropriation for the payment of said certificates; and long after said certificates had been by the gravel company assigned to the relator, and to the knowledge of said city and its officers.

The following is a copy of the provision of said ordinance No. 13,338, to which relator refers, viz.:

"That no certificate for the city's portion of the cost of any street " or banquette; paving of streets or banquettes, in which there is a " clause requiring the contractor to maintain the street or banquette " in good condition for any term, shall be paid to any beneficiary or " assign until the beneficiary shall file with the comptroller a certifi- " cate signed by the commissioner of public works that the mainten- " ance clause in the contract under which said paving certificate is " issued has been fully complied with."

The relator, thereupon, represents and avers, that said ordinance is null and void, and of no effect as against it, because:

1st. It imposes upon the assignee or beneficiary of such certificates

702          SUPREME COURT OF LOUISIANA.

State ex rel. National Broadway Bank vs. City.

as those upon which its demand is founded as a prerequisite to their payment a burden not imposed on the contractor itself, thereby making the position of an assignee worse than that of its assignor, and is, therefore, discriminative and unreasonable.

2nd. It imposes upon the payment of those certificates onerous terms and conditions which did not exist at the time the original contract out of which said certificates originated, was made, and after same had been assigned to relator with the knowledge and consent of the city, and is, therefore, violative of the obligation of the contract and divests vested rights, in contravention of the constitutions of the State and United States.

Finally, the relator avers, "that the sole and only reason why the " city authorities refuse to pay said certificates in cash out of the " funds now in the city treasury appropriated and applicable thereto, " is the fact that (it) has declined to submit to the provisions of said " ordinance No. 13,338 C. S.;" and that said pretension is illegal and unconstitutional.

The following are extracts from the return of the respondents, viz.:

"1. That certificates Nos. 1 and 2, held by relator and described in " its petition, are certificates issued by the municipality of New Or- " leans, for work done for said municipality, and, under the laws gov- " erning the issuance of such certificates or scrip.

"That said scrip is non-negotiable in its character, and that, on their " faces, said certificates bore notice to relator that they were subject " to all the equities between the city of New Orleans and the person " to whom they were originally issued.

"2. That the Rosetta Gravel, Paving and Improvement Company, " to whose order said certificates were issued, agreed in the contract, " which is referred to in relator's petition, and made a part thereof, to " *maintain* Poland street in good order and condition for the term of " five years after said company had finished paving said street; that " said five years have not yet elapsed; that the Rosetta Gravel, Paving " and Improvement Company has failed to comply with the terms of " its contract to maintain Poland street in good condition, and that " the money is not due under said contract, and on the certificates here " sued upon, until the said contract is complied with and the street " maintained in good order and condition.

\*     \*     \*     \*     \*     \*     \*     \*

"4. That ordinance No. 13,338, C. S., is not burdensome, illegal,

" unauthorized, null or void. That the certificates therein provided
" for are issued by city officials without cost or charge. That said
" ordinance is merely administrative in its nature and authorized by
" the city charter, and is useful in the expedition of the business of
" the city with private contractors."

The purport of the return appears to be, that the gravel company
has engaged with the city, as a part of its contract "to *maintain* Po-
" land street in good order and condition for a term of five years,
" after it had finished paving said street;" and that said time has not
elapsed, and said company "has failed to comply with the terms of its
" contract to *maintain* Poland street in good order and condition, and
" that the money is not due under said contract on the certificate sued
" on, until the said contract is complied with and the street *main-*
" *tained* in good order and condition." (Our italics.)

That, notwithstanding the gravel company has been duly notified
"to *repair* Poland street," it has failed to do so.

That ordinance No. 13,338, C. S., is neither "burdensome, illegal,
" unauthorized, null nor void;" but that it is "merely administrative
" in its nature and authorized by the city charter and is useful in the
" expedition of the business of the city with private contractors, etc."

From the foregoing it appears, that the respondents do not contest
the fact that the gravel company had *completed* its contract with the city
to do certain paving work on Poland street, and that same had been
performed satisfactorily to, and accepted by the city; but that they do
contest relator's right to have its certificates paid *until the mainten-*
*ance clause of the gravel company's contract with the city has been*
*carried to its final, and complete termination;* or, in other words, the
relator's demand for the payment of its certificates is premature, the
maturity thereof being postponed by the aforesaid suspensive condi-
tion of the contract to maintain Poland street in good order and
condition.

In order to determine the validity and applicability of ordinance
13,338, C. S., to relator's certificates, and the relief it demands, an
examination must be made of the paving contract which the gravel
company made with the city, which is the foundation of its rights;
and it was conceded in the argument at bar, that relator possessed the
same and no greater rights than the gravel company, its assignor, had
originally—said certificates being *non*-negotiable in form.

On the 10th of May, 1895, the mayor of the city, duly empowered by

Ordinance No. 10,450, C. S., made and entered into a contract with. the Rosetta Gravel, Paving and Improvement Company for the paving of Poland street with concrete gravel—specifying all details of the work.

The following are the terms of what is known as "the maintenance clause," viz:

"The entire work shall be maintained in good order by the contractor for and during a period of five years from date of the final. acceptance. This good order being understood to mean that whenever so directed in writing by the commissioner of public works, all decayed, broken, or injured wood or other material in any part of the street shall be removed and replaced by the contractor within ten days,. with sound materials, according to those specifications, or whenever so directed, etc."

The contract, also, provides for a bond which is of the following tenor, viz:

"The successful bidder will furnish bond with good and solvent security, approved by the mayor and comptroller of the city of New Orleans, in an amount equal to twenty *per cent* of the estimated value of the contract for the *construction* and *maintenance of the work,* according to the foregoing specifications."

In addition to the foregoing clauses, the contract concludes with the following clause with regard to certificates, viz:

"Certificates will be issued for every *two* blocks when *completed* by the contractor and approved by the city engineer and commissioner of public works."

From the foregoing it is manifest that the issuance of the certificates did not depend upon the contractor's compliance with the *maintenance* clause, but solely and alone upon his completion of the two blocks, the price of which they purported to represent.

That stipulation was re-iterated in the bid of the gravel company; and, it provides further, that that "portion of the cost of such paving is to be paid by the city of New Orleans *in cash* out of item two (2) of the reserve fund of the year 1895, and all deferred payments shall bear interest at the rate of six (6) *per cent per annum,* to run from the date of issuance of the joint certificates of payment of the city engineer, and commissioner of public works."

This contract was duly signed by both of the contracting parties.

The two certificates which are declared upon, are in exact con-

formity to the contract, and the assignment thereof was in due form, and, in compliance with the provisions of ordinance No. 2066, A. S., and each endorsement bears the certificate of the city comptroller that it has been duly filed in his department.

By ordinance No. 11,347, C. S., bearing date September 26th, 1895, an appropriation was made in favor of the gravel company to pay the two certificates of relator, out of the reserve fund of 1895; but the comptroller declined to pay the said certificates to relator until ordinance No. 13,338, C. S., had been complied with.

The question of importance is, whether the city council possessed the power to enact ordinance No. 13,338, and give same a retroactive effect with respect to the rights of relator, so as to oblige it to see to it, that the maintenance clause of the paving contract had been fully complied with by the contractor as a *sine qua non* to the payment of its certificates by the city.

In our appreciation, the city had no such power. The terms of the paving contract did not warrant it. The maintenance clause of the contract has exclusive reference to the *repair* of paving once perfect. and complete, and is a condition subsequent thereto. The issuance of the cash certificates had nothing whatever to do, with the maintenance of the street-paving; and to attempt to give to it the retrospective effect its terms would imply, would render it both burdensome and unreasonable, and operate an impairment of the relator's contract in the sense of the federal constitution.

We do not regard this as a *mandamus* proceeding to enforce the obligation of a contract; and it is not a suit to compel the specific performance of a contract.

The object of this suit is to compel the disbursing officers of the city to comply with the terms of specified city ordinances by paying the certificates the relator holds in cash, from a fund which had already been raised and appropriated for that purpose.

Such a proceeding as this is a well-recognized remedy in such a case. Indeed, it is the only one of which such a demand for relief is susceptible.

The certificates are mere *choses* in action, and non-negotiable in form, consequently the relator occupies the same place as the gravel company; but that in no manner alters the situation, or applicability of *mandamus* as a remedy.

45

We are entirely satisfied that the relator's demand is well grounded and that ordinance 13,338 has no application to the certificates it holds. Judgment affirmed.